UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SHARISSE A. THURSTON,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br><br>    Defendant. | CIV. 15-5024-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Sharisse Thurston filed a complaint appealing from an administrative law judge's ("ALJ") decision denying supplemental security income ("SSI") benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 10). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 12). The parties filed their JSMF. (Docket 17). The parties also filed a joint statement of disputed material facts ("JSDMF"). (Docket 18). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 21) is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The Commissioner does not dispute the accuracy of the facts contained in the JSDMF, but only challenges the relevance of those facts. (Docket 18 at p. 1). The parties' JSMF (Docket 17) and JSDMF (Docket 18) are incorporated by

reference.  Further recitation of salient facts is incorporated in the discussion section of this order.

On January 24, 2012, Ms. Thurston filed an application for SSI benefits alleging an onset of disability date of September 21, 2009.  (Docket 17 ¶ 4).  On September 20, 2013, the ALJ issued a decision finding Ms. Thurston was not disabled.  Id. ¶ 16; see also Administrative Record at pp. 8-23 (hereinafter "AR at p. ___").  On February 11, 2015, the Appeals Council denied Ms. Thurston's request for review and affirmed the ALJ's decision.  (Docket 17 ¶ 18).  The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.  It is from this decision which Ms. Thurston timely appeals.

The issue before the court is whether the ALJ's decision of September 20, 2013, that Ms. Thurston was not "under a disability, as defined in the Social Security Act, since October 4, 2011, [through September 20, 2013]" is supported by the substantial evidence in the record as a whole.  (AR at p. 22) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.  The court reviews the Commissioner's decision to determine if an error of law was

committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)). Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act. See Smith, 982 F.2d at 311.

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled

to SSI benefits under Title XVI. 20 CFR § 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). See also Boyd v. Sullivan, 960 F.2d 733, 735 (8th Cir. 1992) (the criteria under 20 CFR § 416.920 are the same under 20 CFR § 404.1520 for disability insurance benefits).[1] The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 8-10; see also Docket 17 ¶ 262).

---

[1] All further references will be to the regulations governing SSI benefits, except where specifically indicated.

**STEP ONE**

At step one, the ALJ determined Ms. Thurston had not been engaged in substantial gainful activity since October 4, 2011, the date upon which she protectively filed for SSI benefits.[2]   (Docket 17 ¶ 263).

**STEP TWO**

"At the second step, [the agency] consider[s] the medical severity of your impairment(s)."   20 CFR § 416.920(a)(4)(ii).   "It is the claimant's burden to establish that [his] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).   A severe impairment is defined as one which significantly limits a physical or mental ability to do basic work activities.   20 CFR § 416.905.   An impairment is not severe, however, if it "amounts to only a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   Kirby, 500 F.3d at 707.   "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two."   Id. (citation omitted).   Additionally, the impairment must have lasted at least twelve months or be expected to result in death.   See 20 CFR § 416.905.

The ALJ identified Ms. Thurston suffered from the following severe impairments: "congenital heart disease, status post multiple heart surgeries; obesity; psychosis, not otherwise specified; depression, not otherwise specified; antisocial personality traits; and polysubstance abuse."   (Docket 17 ¶ 264).

---

[2]The ALJ found Ms. Thurston had been engaged in work activity but it "did not rise to the level of substantial gainful activity . . . ."   (AR at p. 10 ¶ 1).

5

Ms. Thurston objects to the ALJ limiting her severe impairments to these conditions.  (Docket 22 at pp. 25-28).  She argues the ALJ should have included the following additional severe impairments: "anemia" and "the contribution of psychotropic medications to [her] severe fatigue."  Id. at p. 28.  Ms. Thurston asserts the ALJ failed to properly apply 42 U.S.C. § 423(d)(2)(B).  Id.  That section provides:

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner . . . shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.  If the Commissioner . . . does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).

Ms. Thurston argues "[t]he ALJ knew or should have known that [she] was Native American, and her primary care provider in Rapid City was [the] Indian Health Service (Sioux San) . . . ."  (Docket 22 at p. 16).  Yet, she argues "[t]he ALJ did not obtain [her] IHS reports."  Id. at p. 17.  She claims "[t]he ALJ's step two failure to identify anemia, with symptoms of severe fatigue compounded by potent medications, is not excused by his failure to develop the record, which should have informed the step two finding."  Id. at p. 28.  Ms. Thurston argues "[t]his Court has noted that at step two, failure to consider a known impairment is by itself grounds for reversal."  (Docket 22 at p. 28) (referencing Colhoff v. Colvin, No. CIV. 13-5002, 2014 WL 1123518 at *5 (D.S.D., March 20, 2014) (citing Spicer v. Barnhart 64 Fed. Appx. 173, 178 (10th Cir. 2003)).

6

Ms. Thurston argues the record is also incomplete because the ALJ "did not obtain Behavior Management Systems (BMS) reports of counseling, case management and 'Rebound' services . . . to which IHS reports referred." Id. at p. 17.  Ms. Thurston claims "[t]he record before the ALJ reported that her January 13, 2013 admission to Rapid City Regional West psychiatric unit was her third . . . . The record [also] reported . . . that she was . . . treated for [an] apparent psychotic break[down] at a hospital in San Antonio in August 2011. . . The ALJ did not obtain the reports of these three additional psychiatric hospitalizations in Rapid City and San Antonio." Id. (emphasis in original) (referencing JSMF 101, 114, 118, 136 and 206-08).

Ms. Thurston further argues the ALJ failed to properly develop the record by failing to (1) question Ms. Thurston and her mother about the nature and extent of Ms. Thurston's mental disorders; (2) inquire about why and how Ms. Thurston may have worked in the past but those work activities never amounted to substantial gainful activity; (3) inquire of Ms. Thurston's mother whether it was mental illness or substance abuse which caused the failure to improve over time; and (4) question her mother about the number of days fatigue made work attendance unrealistic.  Id. at pp. 18-19.

The Commissioner responds that Ms. Thurston's claim the ALJ failed to properly develop the record is "meritless." (Docket 25 at p. 2).  The defendant argues "there is no indication that Plaintiff ever notified the agency that she even received treatment from the Rapid City IHS.  Indeed, the . . . record does not show that the Rapid City IHS was ever a provider . . . ." Id. at p. 3 (referencing disability reports filed on Ms. Thurston's behalf by her San Antonio, Texas, attorney).  Concerning the local Behavior Management Systems' reports and reports from the San Antonio, Texas, medical facilities, the Commissioner argues

7

"[i]n addition to having no duty to obtain the reports, none of these reports would have changed the ALJ's decision."  Id. at p. 4.

The Commissioner asserts "[t]here was already ample evidence in the record regarding Plaintiff's mental health . . . . [T]he record provides a sufficient basis for the ALJ's decision and there was no indication in the record that additional medical records were necessary."  Id.  The Commissioner concludes that "[g]iven the cumulative nature of Plaintiff's additional evidence, she experienced no prejudice."  Id. at p. 5.

"The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings. . . . Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."  Sims v. Apfel, 530 U.S. 103, 110-11 (2000).  "The regulations make this nature of SSA proceedings quite clear.  They expressly provide that the SSA 'conduct[s] the administrative review process in an informal, nonadversary manner.' "  Id. at p. 111 (citing 20 CFR § 404.900(b)).  "The regulations further make clear that the [Appeals] Council will 'evaluate the entire record,' including 'new and material evidence,' in determining whether to grant review."  Id. (citing 20 CFR § 404.970(b)).

"[S]ocial security hearings are non-adversarial. . . . the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."  Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004).  "The ALJ possesses no interest in denying benefits and must act neutrally in developing the record."  Id. (referencing Richardson v. Perales, 402 U.S. 389, 410 (1971) ("The social security hearing examiner, furthermore, does not act as counsel.  He acts as an examiner charged with developing the facts.")

(other reference omitted).  "[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis."  Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008).

"It is the claimant's burden to establish that [her] impairment or combination of impairments are severe."  Kirby, 500 F.3d at 707.  "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case."  Snead, 360 F.3d at 838.

Ms. Thurston was living in San Antonio when her application for benefits was filed.  (Docket 17 ¶¶ 3 and 4).  Her Texas attorney and his staff completed the "Disability Report-Adult-Form SSA-3368" on her behalf.  See AR at pp. 189-195; see also Docket 17 ¶¶ 203-08.  The report specifically referenced Southwest General Hospital and the University Health System in San Antonio as the medical facilities which provided medical care to Ms. Thurston.  (Docket 17 ¶¶ 207-08).  Simply because the law office failed to specifically identify the extent of Ms. Thurston's care at the clinic and hospital does not permit either the Texas State Disability Determination Services Office or the ALJ to ignore their obligation to obtain these records.[3]

---

[3] Ms. Thurston's Southwest General Hospital emergency room contact on July 29, 2011, is included in the administrative record.  (Docket 17 ¶¶ 67-68). Yet despite the record in 2012 specifically referencing a psychiatric hospitalization in Texas, no effort was made to obtain those records.  See id. ¶¶ 98 and 101.

The Commissioner's argument regarding the Rapid City Regional Hospital West and IHS records is even more disingenuous.  The Commissioner acknowledged the record was silent for the time period between 2008 and the summer of 2011.  (Docket 17 ¶ 66).  The JSMF acknowledges that "[n]o IHS reports are in the record, including mental health records related to her alleged 2010 suicide attempt, anxiety, depression, hallucinations, and treatment with psychiatric medications noted at AR 273 [and] 275."  Id.  See also id. ¶¶ 95 and 113.  The record also specifically referenced Ms. Thurston was being treated at the Sioux San clinic, another common reference to the IHS facility in Rapid City, South Dakota.  See id. ¶¶ 113, 160 and 166.  The IHS records constitute of 96 pages of Ms. Thurston's medical and psychological treatment over the course of 2010 through 2013.[4]  See Docket 18-1.  This history discusses and analyzes Ms. Thurston's "zombie" state and the side effects of her psychotropic medications.  See Docket 18 ¶¶ 30, 37, 42, 47, 49, 53-54, 57, 64, 66-67, 69.

When Ms. Thurston was in Rapid City Regional West in 2013, the record specifically noted a "November 2012 admission to the psychiatric unit" and that the 2013 admission was "her third admission to Rapid City Regional West." (Docket 17 ¶¶ 117-18) (emphasis added).  The Commissioner acknowledges Ms. Thurston's January 1-3, 2011, Rapid City Regional West hospitalization "is not in the record."  Id. ¶ 102.

---

[4]While the BMS records were not disclosed in the administrative record, had the ALJ obtained the IHS records, the BMS records would have stood out as being important to an adequate and complete record.  See Docket 18 ¶¶ 28, 42, 52 and 57.

10

The record before the ALJ gave clear and distinct signals there were other medical and psychiatric records significant to Ms. Thurston's case which were not part of the administrative record.  "Once aware of the critical issue" of Ms. Thurston's extensive and long-term relationship with Regional West, IHS and BMS, "the ALJ should have taken steps to develop the record" by obtaining those records.  Snead, 360 F.3d at 838.  While Ms. Thurston bore the burden of persuasion, the ALJ was responsible for development of the record.  Id.  The ALJ made no effort to "act neutrally in developing the record."  Id.  The ALJ erred as a matter of law at step two of the sequential evaluation process.  This constitutes reversible error.  Spicer, supra.

The court does not accept the Commissioner's argument that any error at step two is irrelevant because the ALJ proceeded to the next step.  (Docket 25 at p. 6).  The absence of the psychiatric hospitalization records may impact the analysis at step three.  Whether Ms. Thurston's hospitalizations at San Antonio and Rapid City constitute repeated episodes of decompensation and whether she experienced marked or extreme limitations under the "B" criteria of the listings in 20 CFR Part 404, Subpart P, Appendix I, cannot not be resolved.  Dr. Pelc's opinion that Ms. Thurston may have suffered "one or two" episodes of decompensation and had some "moderate" restrictions cannot be sustained without consideration of the additional records.  See Docket 17 ¶ 239.

Failure to identify all of a claimant's severe impairments impacts not only the ALJ's credibility findings, consideration of activities of daily living, but most importantly, a claimant's residual functional capacity ("RFC").  "[F]ailure to consider plaintiff's limitations . . . infect[s] the ALJ's . . . further analysis under

11

step four." Spicer, 64 Fed. Appx. at 178. "Failure to consider a known impairment in conducting a step-four inquiry is by itself, grounds for reversal." Id.

The ALJ's failure to develop the record on these issues "strain[s] [the court's] confidence in the 'reliability of the RFC upon which the ALJ based his decision.'" Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (citing Snead, 360 F.3d at 839). "Because this evidence might have altered the outcome of the disability determination, the ALJ's failure to elicit it prejudiced [claimant] in [her] pursuit of benefits." Snead, 360 F.3d at 839 (referencing Shannon, 54 F.3d at 488 ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.")). "With [these] central and potentially dispositive issue[s] unexplored by the ALJ, [the court has] no confidence in the reliability of the RFC upon which the ALJ based his decision." Snead, 360 F.3d at 839.

The evidence not considered by the ALJ detracts from the decision to deny disability benefits. Reed, 399 F.3d at 920. Here the ALJ's failure to develop the record is both unfair and prejudicial. Shannon, 54 F.3d at 488.

## CONCLUSION

The ALJ erred as a matter of law by failing to develop the record in this case. Snead, 360 F.3d at 839. The error is not harmless because the failure to develop the record prejudiced Ms. Thurston's rights and this evidence may well change the ultimate result for this disability claim. Id. The court remands the case to the Commissioner for development of a full and fair record and for

consideration of the additional medical and other evidence relevant to Ms. Thurston's disability claim.[5]

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 21) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to expedite a decision (Docket 27) is denied as moot.

IT IS FURTHER ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), the case is remanded to the Commissioner for rehearing consistent with this decision.

Dated September 27, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

---

[5]Ms. Thurston urges the court to circumvent a remand and award benefits, because if Ms. Thurston dies, her access to benefits expires with her. (Docket 26 at p. 8). The court acknowledges Ms. Thurston's precarious health condition but is required to remand the case for proper development of the record and reconsideration of Ms. Thurston's application for SSI benefits.